[Civ. No. 35804. First Dist., Div. Two. Apr. 22, 1975.]

EDWARD J. KIRBY, as Director, etc., Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS
BOARD, Respondent;
552 BROADWAY, INC. et al., Real Parties in Interest.

**COUNSEL**

Evelle J. Younger, Attorney General, and Julian O. Standen, Deputy Attorney General, for Petitioner.

Floyd R. Mitzner for Respondent.

Harold Silen for Real Parties in Interest.

William A. Kurlander, Stephen Warren Solomon and Ronald L. Gould as Amici Curiae on behalf of Respondent and Real Parties in Interest.

**OPINION**

**ROUSE, J.**—We granted a writ to review decisions of the Alcoholic Beverage Control Appeals Board (hereafter "board"), which decisions

reversed three orders of the Department of Alcoholic Beverage Control (hereafter "department") suspending on-sale liquor licenses of real parties in interest (hereafter "licensees"), for violations of department rule 143.3.[1]

Department determined that the violations were sufficient to establish grounds for suspension or revocation of the licenses pursuant to the provisions of article XX, section 22, of the California Constitution and section 24200, subdivisions (a) and (b), of the Business and Professions Code.[2]

Although the board agreed with the department's findings that rule 143.3 had been repeatedly violated by the licensees, it accepted the argument of the licensees that the rule conflicted with sections 318.5 and 318.6 of the Penal Code and was therefore void and of no effect.[3] We

[1]Department rule 143.3 (Cal. Admin. Code, tit. 4, § 143.3) reads as follows: "Acts or conduct on licensed premises in violation of this rule are deemed contrary to public welfare and morals, and therefore no on-sale license shall be held at any premises where such conduct or acts are permitted.

"Live entertainment is permitted on any licensed premises, except that:

"(1) No licensee shall permit any person to perform acts of or acts which simulate:

"(a) Sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law.

"(b) The touching, caressing or fondling on the breast, buttocks, anus or genitals.

"(c) The displaying of the pubic hair, anus, vulva or genitals.

"(2) Subject to the provisions of subdivision (1) hereof, entertainers whose breasts and/or buttocks are exposed to view shall perform only upon a stage at least 18 inches above the immediate floor level and removed at least six feet from the nearest patron.

"No licensee shall permit any person to use artificial devices or inanimate objects to depict any of the prohibited activities described above.

"No licensee shall permit any person to remain in or upon the licensed premises who exposes to public view any portion of his or her genitals or anus.

"If any provision of this rule or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or application of the rule which can be given effect without the invalid provision or application, and to this end the provisions of this rule are severable."

[2]Article XX, section 22, provides that "The department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals . . . ."

Section 24200, subdivision (a), of the Business and Professions Code provides for the suspension or revocation of licenses "When the continuance of a license would be contrary to public welfare or morals . . . ." Subdivision (b) of that section additionally provides for suspension or revocation upon a violation of "any rules of the department adopted pursuant to the provisions of this division . . . ."

[3]Sections 318.5 and 318.6 of the Penal Code (Stats. 1969, ch. 1534, § 1; ch. 1535, § 1) read as follows:

*Section 318.5:* "Nothing in this code shall invalidate an ordinance of, or be construed to prohibit the adoption of an ordinance by, a county or city, if such ordinance directly regulates the exposure of the genitals or buttocks or of the breasts of any person who acts as a waiter, waitress, or entertainer, whether or not the owner of the establishment in

have concluded that the board erred as a matter of law and that the board's decisions must be annulled.[4]

In tracing the history of the department's regulations, we find that the department's attempts to discipline licensees who employed "topless" dancers in their premises first came to the attention of our Supreme Court in *Boreta Enterprises, Inc.* v. *Department of Alcoholic Beverage Control* (1970) 2 Cal.3d 85 [84 Cal.Rptr. 113, 465 P.2d 1]. In that case, the court affirmed a judgment of the trial court in favor of the licensees.[5] Although the court in *Boreta* pointed out that it was not unaware of the public concern for the proper regulation of premises licensed to sell alcoholic beverages, it nevertheless declined to probe the metaphysics of toplessness "as such," because the department had not made out its case establishing the deleterious consequences of toplessness, nor had it adopted regulations covering the situation.[6] The court strongly suggested that the department adopt such regulations.[7] (Pp. 106-107.)

which the activity is performed employs or pays any compensation to such person to perform such activity, in an establishment which serves food, beverages, or food and beverages, including, but not limited to, alcoholic beverages, for consumption on the premises of such establishment.

"The provisions of this section shall not apply to a theater, concert hall, or similar establishment which is primarily devoted to theatrical performances. . . ."

*Section 318.6:* "Nothing in this code shall invalidate an ordinance of, or be construed to prohibit the adoption of an ordinance by, a city or county, if such ordinance relates to any live acts, demonstrations, or exhibitions which occur in public places, places open to the public, or places open to public view and involve the exposure of the private parts or buttocks of any participant or the breasts of any female participant, and if such ordinance prohibits an act or acts which are not expressly authorized or prohibited by this code.

"The provisions of this section shall not apply to a theater, concert hall, or similar establishment which is primarily devoted to theatrical performances."

[4]Amicus curiae argues that the department exceeded its powers in promulgating rule 143.2 as well. Although the board's decisions mention *both* rules 143.2 and 143.3, the bases of the department's disciplinary orders were violations of rule 143.3; the department's petition discusses only rule 143.3 and it would appear that any determination made by the board, or by us, with respect to rule 143.2, would be obiter dictum.

[5]At the time licensee filed its petition in *Boreta,* a petition for writ of mandate to the superior court was the proper method to review decisions of the board. That procedure has been replaced by the writ of review. provisions found in section 23090 et seq. of the Business and Professions Code.

[6]The court noted that "There was absolutely no evidence presented by the Department . . . which tended to support its conclusion that topless waitresses are contrary to the public welfare and morals because they necessarily lead to improper conduct. No intemperance, exploitation, or lewd or criminal contact between customers and the waitresses were shown to have occurred on the premises." (P. 106.)

[7]Section 25750 of the Business and Professions Code permits the department to adopt rules and regulations as follows: "The department shall make and prescribe such reasonable rules as may be necessary or proper to carry out the purposes and intent of Section 22 of Article XX of the Constitution and to enable it to exercise the powers and perform the duties conferred upon it by that section or by this division, not inconsistent

Concerned with the progression of "topless" dancers to "bottomless" dancers and other forms of live entertainment in premises that it licensed, the department held public hearings on the subject and thereafter promulgated rules 143.2 and 143.3, which became effective in August of 1970. (*Locker* v. *Kirby* (1973) 31 Cal.App.3d 520, 522-523 [107 Cal.Rptr. 446]; *California* v. *LaRue* (1972) 409 U.S. 109, 110-111 [34 L.Ed.2d 342, 347, 93 S.Ct. 390].)

A challenge to the validity of these regulations made shortly before their effective date was unsuccessful in both the Court of Appeal and in the California Supreme Court. A similar challenge in the federal court proved more successful when a three-judge district court held that the regulations unconstitutionally abridged the freedom of expression guaranteed by the First and Fourteenth Amendments to the United States Constitution. Department appealed, and in the case of *California* v. *LaRue, supra;* the United States Supreme Court sustained the department's conclusion that the sale of liquor by the drink and lewd or naked dancing and entertainment should not take place simultaneously, noting that the state regulations there challenged were before the court, not in the context of censoring a dramatic performance in a theater, but rather in the context of licensing bars and nightclubs to sell liquor by the drink. (Pp. 114-115 [34 L.Ed.2d 349-350].) In its opinion, the court summarized the evidence adduced at the hearings, as follows:

"References to the transcript of the hearings submitted by the Department to the District Court indicated that in licensed establishments where 'topless' and 'bottomless' dancers, nude entertainers, and films displaying sexual acts were shown, numerous incidents of legitimate concern to the Department had occurred. Customers were found engaging in oral copulation with women entertainers; customers engaged in public masturbation; and customers placed rolled currency either directly into the vagina of a female entertainer, or on the bar in order that she might pick it up herself. Numerous other forms of contact between the mouths of male customers and the vaginal areas of female performers were reported to have occurred.

"Prostitution occurred in and around such licensed premises, and involved some of the female dancers. Indecent exposure to young girls, attempted rape, rape itself, and assaults on police officers took place on or immediately adjacent to such premises." (P. 111 [34 L.Ed.2d 347-348].)

with any of the provisions of any statute of this State, including particularly the provisions of this division and the provisions of Chapter 5 of Part 1 of Division 3 of Title 2 of the Government Code."

The court then held that "The Department's conclusion, embodied in these regulations, that certain sexual performances and the dispensation of liquor by the drink ought not to occur at premises that have licenses was not an irrational one. Given the added presumption in favor of the validity of the state regulation in this area that the Twenty-first Amendment requires, we cannot hold that the regulations on their face violate the Federal Constitution."[8] (*California* v. *LaRue, supra,* pp. 118-119 [34 L.Ed.2d 352].)

While the department was struggling to contain "topless" and "bottomless" and live "sexual" entertainment in premises it licensed, the Legislature's concern with the proliferation of nudity into establishments serving food and drink and other places open to the public resulted in the enactment of sections 318.5 and 318.6 of the Penal Code. Section 318.5 permits cities and counties to adopt ordinances regulating the "topless" or "bottomless" exposure of waiters, waitresses and entertainers in establishments serving food and drink except theaters and similar establishments. Section 318.6 permits cities and counties to adopt ordinances regulating the "topless" or "bottomless" exposure in relation to "live acts, demonstrations, or exhibitions" in public places or places open to the public, except theaters and similar establishments.

Thereafter, the constitutionality of ordinances of the Counties of Orange and Sacramento and of the City of Sacramento, which had been adopted pursuant to sections 318.5 and 318.6 of the Penal Code, came before our Supreme Court in *Crownover* v. *Musick* (1973) 9 Cal.3d 405 [107 Cal.Rptr. 681, 509 P.2d 497]. The court concluded that such ordinances denied neither freedom of speech and expression nor the equal protection of the laws but were in all respects valid and constitutional regulations of conduct.[9]

One of the arguments presented by the plaintiffs in *Crownover* was that sections 318.5 and 318.6 of the Penal Code and the ordinances authorized by those sections conflicted with article XX, section 22, of the

---

[8]Appellees in *LaRue* withdrew objections that they had originally posed to rule 143.2, adopted by the department at the same time as it adopted rule 143.3, "conceding 'that topless waitresses are not within the protection of the First Amendment; . . .'" (*California* v. *LaRue, supra,* p. 112, fn. 2 [34 L.Ed.2d 348].) A similar conclusion was thereafter reached in *Locker* v. *Kirby, supra,* page 524.

[9]The court found prohibitions on "topless" and "bottomless" waitresses to be justified by two legitimate state purposes—public morals and public welfare—noting that "'Topless' waitresses, who mingle with customers, may stimulate breaches of the peace amongst a bar's largely male clientele. Tawdry establishments featuring nudity as a commercial exhibition and sales promotion may be detrimental to the general welfare of the surrounding community." (P. 424.)

California Constitution, which vests in the department " 'the exclusive power, except as herein provided and in accordance with laws enacted by the Legislature, to license the manufacture, importation and sale of alcoholic beverages in this State . . . .' " (P. 417.) After noting the exclusively penal nature of the local ordinances, the court found that the ordinances did not conflict with the department's jurisdiction. State regulation of the nudity of those serving food and drinks is a subject distinct from the regulation of the sale of those drinks. Local regulation of the state of dress of waiters, waitresses or entertainers in establishments serving food or beverages, pursuant to the authorization of state statutes, does not per se conflict with the power of the department to license and regulate the manufacture, sale, purchase, possession or transportation of alcoholic beverages. (*Crownover* v. *Musick, supra,* pp. 417-418.)

■ Thus, we conclude that rule 143.3, promulgated by the department pursuant to its exclusive power to license and regulate the sale of alcoholic beverages in this state under article XX, section 22, does not conflict with sections 318.5 and 318.6 of the Penal Code, which merely permit cities and counties to adopt penal ordinances regulating "topless" and "bottomless" exposure in establishments serving food or beverages and other public places. (*Crownover* v. *Musick, supra,* pp. 416-418.) Nor does the rule nullify the effect of the legislative enactment, as was the case in *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1964) 228 Cal.App.2d 1, 7 [39 Cal.Rptr. 192]. Since the rule was promulgated pursuant to the department's constitutional authority to regulate the sale of drinks in premises it licenses, no issue of preemption is involved.

The decisions of the board are annulled. The board is directed to reinstate the orders of the department.

Taylor, P. J., and Kane, J., concurred.

Petitions for a rehearing were denied May 22, 1975, and the petitions of the respondent and the real parties in interest for a hearing by the Supreme Court were denied June 19, 1975.